The defendant, Jancis Louise Fuller, is charged in a two-count information with criminal attempt to commit murder, C.G.S. §§ 53a-49 and 53a-54a, and criminal attempt to commit assault in the first degree, C.G.S. §§ 53a-49 and 53a-59. The state alleges these crimes were committed on June 29, 1995. See Information.
The consequences to the plaintiff are severe. She could receive a sentence of up to 20 years for each violation. See Section 53a-54a, 53a-59, 53a-51, and 53a-35a. In addition, she could be fined an amount not to exceed $15,000 for each of these offenses. C.G.S. § 53a-41.
According to the state, these charges arise from shootings which occurred in the early hours of June 29, 1995. Multiple shots were fired at and into the home of Judge Robert C. Leuba and his wife, Hope. At least two of these shots entered the Leubas' bedroom.
Based on a variety of evidence, defendant was arrested almost immediately
It is significant to this Motion for Disqualification that Judge Leuba is "the deputy chief court administrator. "
Defendant's Motion for Disqualification of Judicial Authority states:
 "Pursuant to Connecticut Practice Book Section 996, the Defendant hereby moves that the Honorable Parker, J., disqualify himself as the Judicial Authority in the above captioned criminal matter on the basis of Canon 3(C) of the Code of Judicial Conduct; more specifically Canon 3(C) 1 calling for a judge to disqualify himself CT Page 3094 in a proceeding in which his impartiality might reasonably be questioned when per Canon 3(C)(1)(d) he may have an interest that could be substantially affected by the outcome of the proceeding."
 "In further support of this motion, Defendant states that Canon 7B requires compliance with the Code of Judicial Conduct which includes that a judge should avoid impropriety in all his activities in Canon 2 and promote the public confidence in the integrity and impartiality of the judiciary Canon 2(A) and should not allow any relationship to influence his judicial conduct or judgment Canon 2(B). A judge should perform the duties of his office impartially and diligently per Canon 3 and within these adjudicating responsibilities Canon 3(A) he should be unswayed by fear of criticism per Canon 3(A)(1)."
 "In the instant case the alleged victims of the charges Defendant faces are Mrs. and Judge Robert C. Leuba, who is also Deputy Chief Court Administrator in the state of Connecticut."
 "This Court, the Honorable Parker, J., is subject to the managerial discretion within the scope of the Deputy Chief Court Administrator creating not just the potential for an appearance of impropriety or an interest that could be substantially affected by the outcome of the proceeding but, most importantly whether the Court can in fact be completely impartial." Defendant's Motion for Disqualification of Judicial Authority, February 27, 1996.
The defendant states, "this court, the Honorable Parker, J., is subject to the managerial discretion within the scope of the deputy chief court administrator. . . ." Id. What that allegation means is not clear. Specifically, it is not clear what the defendant means by the term "managerial discretion." By statute the chief court administrator has very extensive authority over the judicial department and the superior court judges. E.g., C.G.S. §§ 51-5a, 51-11, 51-45a, 51-45b, 51-164 (t) b, and 51-183a. The deputy chief court administrator is appointed by the chief court administrator and together they decide the assignment(s) of each superior court judge. That CT Page 3095 power might call into question a superior court judge's objectivity if called upon to exercise his or her judicial power on a matter in which the chief court administrator or the deputy chief court administrator might have some personal interest.
The superior court is the sole trial court. By statute, " [t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute's C.G.S. § 51-164s.
Defendant has moved to disqualify this one judge of the superior court. At the oral argument on the motion, the following occurred:
 THE COURT: It is your claim that there's a basis for a finding of impartiality or a lack of impartiality on my part that is different than that which would be applicable to all the other judges?
 MS. ANSELL: Absolutely not, your Honor, and if your Honor is inferring that from my motion — and I'd submit it's badly written. Your Honor was merely the judge who was sitting on the case after, I believe, Judge Purtill recused himself and so you are the instant court.
Transcript of Proceedings, March 8, 1996, pp. 15-16. Defendant concedes that the grounds for disqualification asserted against this one judge would apply equally to all other judges of the superior court.
This concession is important. If this judge were disqualified, and therefore recused himself, a like motion could be directed to each and every judge of the superior court assigned to this case. Such a motion or motions should have the same result, disqualification and/or recusal of each judge assigned. Then, there would be no judge to preside over the trial of defendant's case probably resulting in the eventual dismissal of the charges against her.
Our Supreme Court faced a like situation. In Dacey v.Connecticut Bar Association, 170 Conn. 520 (1976), the plaintiff, Dacey, sued the Connecticut Bar Association in libel. He was successful in the trial court. The defendant Connecticut Bar CT Page 3096 Association appealed. The plaintiff challenged the propriety of the Supreme Court's determining the appeal; every justice of the Supreme Court was a member of the defendant bar association. Furthermore, a full court could not be formed from among the total membership of the Supreme Court and the superior court who were not members of the defendant bar association. Dacey,170 Conn. at 524. The Supreme Court stated:
 "Article fifth, § 1, of the state constitution vests the judicial power of the state in the courts. The Supreme Court exercises appellate jurisdiction as defined by law. This judicial responsibility is an attribute of sovereignty. There is a limitation upon the right or duty of judges to disqualify themselves. Disqualification must yield to necessity where to disqualify would destroy the only tribunal in which relief could be had and thus preclude determination of the issue. In such case it has been held, consistently, the court must act no matter how disagreeable its task may be." New Jersey State Bar Assn. v. New Jersey Assn. of Realtor Boards, 118 N.J. Super. 203, 209, 287 A.2d 14; see Evans v. Gore, 253 U.S. 245, 247-48, 40 S.Ct. 550, 64 L.Ed. 887; Moulton v. Byrd, 224 Ala. 403, 405, 140 So. 384; Federal Construction Co. v. Curd, 179 Cal. 489, 493-94, 177 P. 469; Wheeler v. Board of Trustees, 200 Ga. 323, 326-28, 37 S.E.2d 322; Long v. Watts, 183 N.C. 99, 102, 110 S.E. 765; First American Bank Trust Co. v. Ellwein, 221 N.W.2d 509, 515-16 (N.D.), cert. denied, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301; Alamo Title Co. v. San Antonio Bar Assn., 360 S.W.2d 814, 817
(Tex.Civ.App. ) (application for writ of error refused, no reversible error); see also 46 Am.Jur.2d, Judges, § 89.
 "The defendant is entitled by law to appeal to this court. General statutes § 52-263. There is no other appellate tribunal to which, under the law, the defendant can appeal. It was sued and a verdict was rendered against it. It brought the appeal in due course. Both parties have orally argued the appeal and both have submitted extensive brief's. In this situation, the only course open to us is to consider the arguments and decide the appeal. See Evans v. Gore, supra." CT Page 3097
Our Supreme Court cited Evans v. Gore, 253 U.S. 245 (1920). In that case, the United States Supreme Court was called upon to decide the constitutionality of an act which it was claimed diminished the compensation of federal judges. The compensation of federal judges "shall not be diminished during their Continuance in Office." U.S. Const., art. III, § 1. Of course, the members of the Supreme Court, would be effected by the decision they were called upon to make.
 "Because of the individual relation of the members of this court to the question, thus broadly stated, we cannot but regret that its solution falls to us; and this although each member has been paying the tax in respect of his salary voluntarily and in regular course. But jurisdiction of the present case cannot be declined or renounced. The plaintiff was entitled by law to invoke our jurisdiction as respects his own compensation, in which no other judge can have any direct personal interest; and there was no other appellate tribunal to which under the law he could go. He brought the case here in due course, the government joined him in asking an early determination of the question involved, and both have been heard at the bar and through printed briefs. In this situation, the only course open to us is to consider and decide the cause — a conclusion supported by the precedents reaching back many years." Evans v. Gore, 253 U.S. 245, 247-8 (1920).
The United states Supreme Court held that it had to decide the case and did so.
In Pilla v. American Bar Assn., 542 F.2d 56 (8 cir. 1976). the plaintiffs challenged the rules limiting the practice of law to licensed attorneys thus barring lay persons from representing litigants in both civil and criminal cases. The plaintiffs "named as defendants The American Bar Association, the Chief Justice of the United States and four of the eight Associate Justices of the Supreme Court of the United states, all of the circuit judges, including senior circuit judges of this circuit, practically all of the district judges of this circuit, members of the Supreme Court of Minnesota and other defendants too numerous to mention." Pilla v. American Bar Assn.,542 F.2d 56, 57 (8 cir. 1976). CT Page 3098
The principal was neatly stated:
 "There is maxim of law to the effect that where all judges are disqualified, none are. Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920). The theory supporting this maxim is that if disqualification operates so as to bar justice to the parties and no other tribunal is available, the disqualified judge or judges may by necessity proceed to judgment. 48 C.J.S. § 74." Pilla v. American Bar Assn., 542 F.2d 56, 59 (8 cir. 1976).
In deciding a motion for his own recusal, then Associate Justice Rehnquist noted:
 "Those federal courts of appeal which have considered the matter have unanimously concluded that a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." Memorandum of Decision on Motion To Disqualify, Mr. Justice Rehnquist, Laird v. Tatum, 409 U.S. 824, 837 (1972).
Applying the principals just stated, this court must deny the Motion for Disqualification of Judicial Authority.
It is so ordered.
Parker, J.